UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESTINY L. OWENS, et al.,<br>Plaintiffs,<br>v.<br>JANSSEN PHARMACEUTICALS, INC., et al.,<br>Defendants. | Case No. 25-cv-11129-RFL<br>**ORDER DENYING MOTION TO DISMISS**<br>Re: Dkt. No. 47 |

Plaintiffs Destiny, Yasmeen, and Branden Owens, suing individually and as representatives of the estate of their mother, Stacey Owens, bring this action against Johnson & Johnson, Janssen Pharmaceuticals, Inc., and Janssen Research & Development, LLC. (Dkt. No. 41 ("FAC").) Plaintiffs allege that Defendants failed to warn consumers of the risk of breast cancer from taking Risperdal (the name brand for risperidone), an antipsychotic drug that Defendants allegedly manufacture. (*Id.* ¶¶ 1–6.) They allege that Stacey Owens developed breast cancer and died because she took brand name and generic Risperdal, but that she would not have consented to her Risperdal treatment had she known the true risk. (*Id.* ¶¶ 118–27.) Plaintiffs bring a strict products liability failure to warn claim (Count I), a general negligence claim (Count II), a negligent failure to warn claim (Count III), a fraud claim (Count IV), as well as derivative wrongful death and survival actions (Counts V & VI). Plaintiffs' original complaint was dismissed, with leave to amend, because as pled all claims were barred by the statute of limitations, preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"), and/or inadequately pled. *Owens v. Johnson & Johnson Co.*, No. 25-cv-11129-RFL, 2026 WL

1388701, at *1 (N.D. Cal. May 18, 2026). Plaintiffs filed the FAC, and Defendants again move to dismiss all claims. (Dkt. No. 47 ("Motion").) For the reasons explained below, Defendants' motion is **DENIED**. This Order assumes the reader is familiar with the facts of the case, the applicable legal standards, and the arguments made by the parties.

***Statute of Limitations***. To avoid the default rule that Plaintiffs' claims accrued, at the latest, upon Stacey Owens's death, Plaintiffs must allege when and how they came to suspect that Stacey Owens's injuries were caused by wrongdoing. *See Owens*, 2026 WL 1388701, at *1. The FAC plausibly pleads that Plaintiffs' claims accrued in March 2025, when Destinee Owens saw an attorney advertising on Facebook and Instagram indicating that there may be a link between Risperdal and breast cancer. (FAC ¶ 139.) The FAC alleges that "after being diagnosed with breast cancer," Stacey Owens "inquired about the potential cause of her cancer, but Decedent's medical providers never attributed her breast cancer to any specific cause" and "[n]o provider ever suggested . . . that her Risperdal use could be connected to breast cancer." (*Id.* ¶ 138.) Therefore, it is plausible that Stacy Owens reasonably understood her cancer to be of an unknown cause after inquiring with medical professionals, and that until 2025, the Owenses had no reason to suspect that Stacey Owens's cancer was cause by "wrongdoing," as opposed to reasonably concluding that it was a biological phenomenon that was not attributable to a wrongful cause. *See, e.g.*, *Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1218–19 (N.D. Cal. 2014). And because it is plausible that they were not on notice of any wrongdoing before 2025, the Owenses had no obligation to investigate prior to that date, nor are they charged with knowledge of scientific studies or other public reports regarding the alleged link between Risperdal and breast cancer. *Id.* at 1220 (citing *Unruh–Haxton v. Regents of University of California*, 76 Cal. Rptr. 3d 146, 163 (Ct. App. 2008)). Plaintiffs have plausibly alleged that their claims are timely under the discovery rule.

***Preemption***. As explained in greater detail in the prior order in this case, to avoid FDCA preemption Plaintiffs are required to plead "a labeling deficiency that Defendants could have corrected" using the "changes being effected" ("CBE") regulation. *Owens*, 2026 WL 1388701,

at *2 (citing *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 708 (2d Cir. 2019)).[1] In other words, they must allege that Defendants had "newly acquired information" "not previously submitted to the" Food and Drug Administration ("FDA"), that would have supported a stronger warning regarding the risk of breast cancer associated with Risperdal. *See* 21 C.F.R. §§ 314.3(b), 314.70(c)(6)(iii). If Plaintiffs meet that standard, "the burden shifts to [Defendants] to demonstrate that there is clear evidence that the FDA would not have approved a change to the prescription drug's label." *Gibbons*, 919 F.3d at 708 (citation modified). Assuming the truth of Plaintiffs' allegations and drawing all reasonable inferences in their favor, they have adequately alleged the existence of newly acquired information that would plausibly have supported a stronger warning.

Plaintiffs cite a 2002 study that found that "antipsychotic dopamine antagonists was associated with a 16% increase in the risk of breast cancer" and concluded that "[a]ntipsychotic dopamine antagonist use may confer a small but significant risk of breast cancer."[2] Though the findings were "preliminary" and required further confirmation before implementing "changes in patients' anticpsychotic medication regimens," the authors stated that "these results have important implications for the general medical care given to psychiatric patients" and suggested "enhanced monitoring for cancer." (Dkt. No. 50-5 at 8.) This study was published before Stacey Owens was diagnosed with cancer and before she began Risperdal treatment. (FAC ¶¶ 119–121.) Plaintiffs cite a 2014 study, published while Stacey Owens was allegedly still taking Risperdal while battling breast cancer, recommending that patients with breast cancer "avoid" risperidone.[3] Finally, Plaintiffs cite 44 adverse event reports between 2012 and 2016 where

---

[1] Because this order finds that Plaintiffs satisfy their pleading requirement under the current CBE regulation, it does not reach the question of Plaintiffs' pleading burden for pre-2008 conduct. *See Owens*, 2026 WL 1388701, at *2.

[2] Wang, Philip S et al., *Dopamine Antagonists and the Development of Breast Cancer*. Arch. Gen. Psychiatry 1147 (2002), https://doi.org/10.1001/archpsyc.59.12.1147, (cited at FAC ¶ 84; *see also* Dkt. No. 50-5).

[3] T. Rahman, et al. Antipsychotic treatment in breast cancer patients, 171 AM. J. PSYCHIATRY, 616 (2014), https://doi.org/10.1176/appi.ajp.2013.13050650, (cited at FAC ¶

individuals reported being diagnosed with breast cancer after taking Risperdal. (*Id.* ¶ 61.) It is reasonable to infer that at least some of these adverse events were reported while Stacey Owens was still being regularly treated with Risperdal.

Plaintiffs allege that, when viewed holistically, the studies and adverse events together "constitute[] 'newly acquired information' Defendants could have used to reanalyze their previously submitted Risperdal data" and issue a stronger warning during the period when Stacey Owens was being treated with Risperdal. (*Id.* ¶¶ 63, 72, 85.)[4] They also allege that Defendants "failed to report to the FDA significant new information concerning the risk of breast cancer and Defendants' Drugs, nor did they present the FDA with a proposed warning disclosing the risk of breast cancer associated with Defendants' Drugs." (*Id.* at 109.) Even assuming that some of the information discussed above was *available* to the FDA, Plaintiffs have plausibly alleged that, viewed as a whole, Defendants possessed "newly acquired information" "not previously submitted to the [FDA]" that would have supported a stronger warning regarding Risperdal's link to breast cancer. *See Wyeth v. Levine*, 555 U.S. 555, 569–70 (2009) (explaining that the CBE regulations account "for the fact that risk information accumulates over time and that the same data may take on a different meaning in light of subsequent developments").

Defendants, for their part, have not demonstrated that, as a matter of law, "there is clear evidence that the FDA would not have approved a change to the prescription drug's label." *Gibbons*, 919 F.3d at 708. Defendants argue that the FDA "*did* reject Plaintiffs' proposed warning in January 2025 when considering the very theory asserted here." (Dkt. No. 47 at 10 (emphasis in original).) Defendants point to a supplemental approval letter from the FDA indicating that on September 13, 2024, the FDA determined that "new safety information . . . should be included in the labeling for Risperdal." (Dkt. No. 47-10 at 2.)[5] The letter does not

---

71; *see also* Dkt. No. 50-7 at 5).

[4] Because the evidence discussed above is sufficient to carry Plaintiffs' pleading burden, this order does not discuss the remaining "newly acquired information" alleged in the Complaint.

[5] Defendants' request for judicial notice of publicly available FDA records is **GRANTED.** *See*

specify what new safety information is referenced. The 2025 label updates the "Hyperprolactinemia" subsection to state that "[p]ublished epidemiologic studies have shown inconsistent results when exploring the potential association between hyperprolactinemia and breast cancer." (Dkt. No. 47-11 § 5.6.)[6] Without more, this record does not compel finding as a matter of law at the pleadings stage that there is clear evidence that the FDA would have rejected a stronger warning. There is no indication that a stronger warning was proposed or advocated for by Defendants or anyone else. Nor does the label's reference to "epidemiologic studies" indicate which studies the FDA considered, or whether the FDA considered a holistic analysis of the specific studies and adverse event reports alleged in the FAC. Therefore, Plaintiffs have plausibly pleaded that their claims are not preempted.

***Negligence***. To the extent Plaintiffs' general negligence claim is premised on a failure to warn theory, it is not preempted for the reasons already discussed. This includes Plaintiffs' allegations that, due to Defendants' pre- and post-approval failure to "perform adequate testing, research, and analysis concerning the safety" of Risperdal, they failed to adequately inform the FDA about the risks of the drug and failed to adequately warn the public, resulting in harm to Plaintiffs. *See Valentine v. Baxter Healthcare Corporation*, 81 Cal. Rptr. 2d 252, 264–65 (Ct. App. 1999) (holding that the "duty to test is a subpart of the other three duties [to safely manufacture, adequately design, and appropriately warn]"). Furthermore, the general negligence claim is adequately pled based on the studies and adverse event reports identified above, and is not subject to dismissal at the pleadings stage for being duplicative. *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762–63 (9th Cir. 2015) (citing Fed. R. Civ. P. 8(d)(2)). Finally, because Plaintiffs concede that they are "not pursuing a design defect claim" (Dkt. No. 49 at 24 n. 6), this order does not reach Defendants' design defect preemption argument.

---

*Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013).

[6] Prior to the 2025 update, the label stated that "[n]either clinical studies nor epidemiologic studies conducted to date have shown an association between chronic administration of this class of drugs and tumorigenesis in humans; the available evidence is considered too limited to be conclusive at this time." (Dkt. No. 47-9 at 17.)

***Wrongful Death and Survival Actions***. Defendants' only challenge to these actions is that they rise or fall with the strict products liability and negligence claims. (Dkt. No. 47 at 30–30.) Therefore, Defendants' Motion to Dismiss is denied as to Counts V and VI for the reasons already stated.

***Fraud Claim.*** Plaintiffs' fraud claim is alleged with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b), in light of the inherent limitations of omission-based fraud claims. *See Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809, 817, 833 (N.D. Cal. 2019). The FAC alleges that "[d]uring the time the Defendant[s] manufactured and sold Defendants' Drugs in the United States, the weight of scientific evidence showed that the drugs exposed users to an increased risk of developing breast cancer," yet Defendants "failed to disclose this risk to consumers on the drugs' labels—or through any other means—and . . . failed to report these risks to the FDA." (FAC ¶ 103; *see also* ¶ 109.) The FAC contains particularized allegations of the "scientific evidence" at issue that was omitted from disclosure, including the studies and adverse events already discussed. As a result, Stacey Owens allegedly was treated with Risperdal continuously between 2003 and 2014, and intermittently from 2014 until her death in 2016, without knowing the true risks. These allegations are specific enough to plead an omission-based fraud claim under Rule 9(b). Defendants' Motion to Dismiss is denied as to Count IV for the reasons already stated.

***Punitive Damages***. At the pleading stage, and drawing all reasonable inferences in Plaintiffs' favor, they have plausibly alleged entitlement to punitive damages. While California law will ultimately require Plaintiffs to prove "the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice . . . on the part of an *officer*, *director*, or managing *agent* of the corporation," Cal. Civ. Code § 3294, Federal Rule of Civil Procedure 8 governs the sufficiency of Plaintiffs' allegations regarding punitive damages. *Terpin v. AT&T Mobility LLC*, 118 F.4th 1102, 1113 n. 3 (9th Cir. 2024); *see also Dutch Girl Plaza LLC v. Marathon Petroleum Corp.*, No. 25-cv-01390-JST, 2025 WL 2830249, at *9 (N.D. Cal. Oct. 6, 2025). Plaintiffs' allegations regarding Defendants' "deliberate[]" acts to mislead

the FDA and the public and obfuscate the risk of cancer from their products is sufficient to meet the federal pleading standard. (FAC ¶¶ 113–17.)

***Conclusion***. For the foregoing reason, Defendants' Motion to Dismiss (Dkt. No. 47) is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 24, 2026

RITA F. LIN
United States District Judge